USDC-BAL
'26 SEP 25 AM10:30

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

**SEAN D. SIMMS**
4216 Lowell Drive
Pikesville, MD 21208

*Plaintiff, pro se*

v.

Civil Action No.: MJM 26 CV 03797

**URBAN ONE, INC.,**
Serve: Corporate Registered Agent
CSC Lawyers Incorporating Service Company
7 St. Paul Street, Suite 820
Baltimore, MD 21202

**CATHERINE HUGHES a/k/a CATHY HUGHES**
Individually, and in her Corporate Capacity as
Chairperson of the Board of Directors
Serve: Urban One, Inc. Headquarters
1010 Wayne Avenue, 14th Floor
Silver Spring, MD 20910

**KRISTOPHER SIMPSON**
Individually, and in his Corporate Capacity as
Senior Vice President and General Counsel
Serve: Urban One, Inc. Headquarters
1010 Wayne Avenue, 14th Floor
Silver Spring, MD 20910

**CARLTON DOUGLAS**
Individually, and in his Capacity as an Independent
Brokered Broadcast Platform Host/Operator
Serve: At Place of Business:
Carlton C. Douglas Funeral Services
1701 McCulloh Street
Baltimore, MD 21217

*Defendants,*

## CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW the Plaintiff, SEAN D. SIMMS, (hereinafter referred to as "Plaintiff, appearing *pro se*, and hereby files this Civil Complaint against Defendants Urban One, Inc., Cathy Hughes, Kristopher Simpson, and Carlton Douglas, and in support thereof respectfully alleges as follows:

## DIRECT PRELIMINARY STATEMENT

1. This is a high-stakes media tort and federal civil rights action brought by an independent, non-commercial investigative journalist seeking $35,000,000.00 in total damages against a public micro-cap broadcasting conglomerate and its executive leadership matrix.
2. This action arises out of a coordinated, bad-faith corporate campaign to defame, censor, and criminally threaten the Plaintiff to force the absolute suppression of investigative reporting detailing a 20-year legacy court fee alteration scheme within the municipal state agencies of Baltimore City, which Plaintiff had formally reported directly to the Federal Bureau of Investigation (FBI).
3. Defendants deliberately weaponized their commercial broadcast facilities on WOLB 1010 AM, intentionally manipulated studio equipment to strip the Plaintiff of his voice mid-broadcast, permitted an unmitigated, un-delayed true criminal kidnapping threat to transmit to the public airwaves, and deployed their stock-owning General Counsel to issue direct, unlawful criminal prosecution threats against the Plaintiff to force the abandonment of his evidence.

## JURISDICTION AND VENUE

4. This Court possesses subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction), as the claims asserted herein arise directly under the Constitution and the laws of the United States, specifically 42 U.S.C. §§ 1983 and 1985 (Civil Rights and Witness Intimidation Conspiracy) and 42 U.S.C. § 2000aa (Privacy Protection Act).

5. This Court possesses supplemental jurisdiction over the Plaintiff's related state law tort claims pursuant to 28 U.S.C. § 1367, because the state law counts—including Defamation Per Se, Intentional Infliction of Emotional Distress, Negligent Supervision, and Tortious Interference—derive from a common nucleus of operative facts and form part of the same constitutional case or controversy.

6. This Court possesses personal jurisdiction over Defendant Urban One, Inc. because it is a corporation doing substantial business in the State of Maryland and maintains its principal corporate headquarters within this judicial district. This Court possesses personal jurisdiction over individual Defendants Cathy Hughes, Kristopher Simpson, and Carlton Douglas because they reside, maintain principal places of business, or engaged in tortious and unlawful conduct within the State of Maryland.

7. Venue is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside or conduct primary corporate operations within this judicial district, and a substantial part of the events, omissions, live broadcast technical failures, and subsequent corporate criminal threats giving rise to these claims occurred directly within this district.

**PLAINTIFF'S INDEPENDENT ADMINISTRATIVE STANDING AND INAPPLICABILITY OF PRECLUSION**

8. Plaintiff Sean D. Simms brings this action strictly in his individual capacity as An independent journalist, administrative representative, and private citizen seeking redress for distinct, personal tortious injuries, statutory violations, and criminal threats committed directly against him.

9. Plaintiff explicitly states that this media tort action does not seek to re-litigate the Title VII employment parameters, merits, or administrative conclusions of any prior, closed civil litigation involving third parties. Accordingly, the doctrines of Res Judicata, Collateral Estoppel, or Issue Preclusion are entirely inapplicable to this action.

10. At all times relevant to the operative timeline, Plaintiff was, and remains, the actively designated formal representative and a primary material fact witness in an active, ongoing federal Equal Employment Opportunity Commission (EEOC) and Maryland Department of Labor (DOL) whistleblower wrongful termination investigation involving the targets of his journalistic reporting.

11. Plaintiff and the FBI are officially designated as named witnesses under Interrogatory 18 of the formal regulatory discovery record. The historical fact of the Defendants' retaliatory animus, witness intimidation, and corporate cover-up during the pendency of these active regulatory and law enforcement investigations stands completely independent of any prior judicial resolution of separate third-party claims.

12. Statute of Limitations and Pattern of Conduct Declaration:

Plaintiff explicitly clarifies that to the extent any prior historical events,

interactions, or broadcast incidents documented within this Complaint fall outside the technical statutory limitations periods for individual actionable torts, such background incidents are expressly introduced pursuant to Federal Rule of Evidence 404(b). These historical facts are utilized as critical, permissible contextual evidence to demonstrate the Defendants' long-standing operational notice, continuous course of conduct, absence of mistake, deep-seated personal animus, and a systemic, premeditated pattern of civil rights conspiracy and airwave suppression.

## PARTIES

### A. The Plaintiff

13. Plaintiff, Sean D. Simms, is an individual, independent investigative journalist, the creator and host of the investigative podcast *The Outsiders*, and a lifelong native and resident of Baltimore, Maryland. Plaintiff operates his news-gathering platform strictly as a non-commercial, non-income-generating public service dedicated entirely to community education, local transparency, and civic engagement.

### B. The Corporate Defendant

14. Defendant, Urban One, Inc., is a Delaware corporation with its principal place of business located at 1010 Wayne Avenue, Silver Spring, Maryland 20910. Defendant owns and operates commercial radio station WOLB 1010 AM in Baltimore, Maryland, and is vicariously liable for the tortious, negligent, and unlawful conduct of its executives, employees, and agents under the doctrine of *respondeat superior*.

### C. The Individual Defendants

15. Defendant, Cathy Hughes, is an individual and the Founder and Chairperson of the Board of Directors of Urban One, Inc. Defendant Hughes maintains ultimate operational, supervisory, and editorial authority over Urban One, Inc.'s broadcast properties and is sued in her individual capacity for her personal acts and omissions, and in her official capacity as Chairperson of the Board of Directors for actions taken under the scope and authority of her position.

16. Defendant, Kristopher Simpson, is an individual and the Senior Vice President and General Counsel of Urban One, Inc. Defendant Simpson is a corporate shareholder owning massive personal equity and corporate stock in Urban One, Inc. He is sued in his individual capacity for his direct tortious conduct, conflict of interest, and the deployment of direct criminal threats to suppress exculpatory evidence and in his corporate capacity as Senior Vice President and General Counsel for actions taken under the scope, color, and authority of his executive positions

17. Defendant, Carlton Douglas, is an individual and in his Capacity operating as an independent brokered broadcast platform host/operator, time-brokerage lessee, or third-party programmer who purchased commercial airtime from Urban One, Inc. to host *The Frank Conaway Sr. Show* on WOLB 1010 AM. Defendant Douglas is sued in his individual capacity for his direct operational omissions, intentional mic/line manipulation, and active participation in an on-air cover-up.

## STATEMENT OF OPERATIVE FACTS

### A. Plaintiff's Generational Communal Legacy and Journalistic Platform

18. Plaintiff is a native of Baltimore City with profound, deep-seated generational roots in the local community. Plaintiff is the son of the late Sterling Simms Senior and Sharon

Brown Simms. Plaintiff's maternal grandfather was the late Pastor Joseph "Preacher" Brown Senior, a revered local spiritual leader who founded the Manna Bible Baptist Church (MBBC) in Baltimore in 1968, and was the founder and director of the National Religious Broadcasters (NRB) member ministry *The Grace Memorial Hour* for over 50 years.

19. Plaintiff's own public service broadcasting career, which began in 1985 under the tutelage of his grandfather on *The Grace Memorial Hour*, was an extension of this trusted, multi-generational Baltimore broadcasting legacy.

20. Utilizing his platform *The Outsiders*, Plaintiff investigated, analyzed, and informed the public on matters of intense public concern, including local government audits, hazardous municipal courthouse facility conditions (toxic lead, asbestos, rats, and Legionella bacteria), and institutional fraud vulnerabilities.

B. **The Discovery of Financial Malfeasance, FBI Disclosure, and the Applebee's Notice Meeting**

21. In the course of his journalistic news-gathering, Plaintiff uncovered a 20-year legacy court fee alteration scheme executed by public officials to manipulate public records

and pass state compliance reviews for the Maryland Electronic Courts (MDEC) system rollout. Plaintiff and his spouse formally disclosed and reported this financial scheme directly to the Federal Bureau of Investigation (FBI).

22. Prior to any broadcast incident, Plaintiff, Bishop Barry Chapman (referred to on-air by host Douglas as Brian Chapman), and Defendant Carlton Douglas held a physical meeting at an Applebee's restaurant.

23. During this meeting, Plaintiff explicitly briefed and put Defendant Douglas on direct personal notice regarding the hazardous municipal courthouse facility conditions and the ongoing retaliatory treatment executed by Clerk Xavier Conaway against court employees and the Plaintiff's spouse.

24. Furthermore, Defendant Carlton Douglas maintained an intimate, long-standing personal relationship with the Plaintiff's family, established by the fact that when Plaintiff's brother, Shelton Simms, passed away in August of 2008, Defendant Carlton Douglas and his designated funeral home facilities personally managed the burial and funeral arrangements.

C. **Further On-Air Incidents and Executive Corporate Notice**

25. On **October 4, 2024**, during the WOLB 1010 AM Frank Conaway Sr. Show, co-host Attorney Tehma Smith-Wilson, along with co-host Attorney Robert Dashiell and Host Carlton Douglas questioned guest Clerk Xavier Conaway about his opinion of the judges at the Circuit Court for Baltimore City.

26. Attorney Tehma Smith-Wilson specifically engaged Clerk Conaway about the judges and Clerk Conaway stated: "It is important that you do look into these judges….they do not put the public first in their obligations." Conaway went on to say, "You have to get people involved in, because like you said, there's no one that runs against them because they, they run it like, almost like the mafia."

27. This broadcast establishes a documented, continuous pattern of actual malice and corporate negligence by Defendants Urban One, Inc., Cathy Hughes, and Kristopher Simpson, who maintained operational control over WOLB 1010 AM yet failed to censor or correct known reckless behavior by host Carlton Douglas. By permitting their

broadcast platform to be used to falsely characterize the Baltimore City Judiciary as a 'mafia' enterprise, the corporate Defendants had explicit, pre-existing notice of Douglas's propensity for disseminating defamatory falsehoods. For the Plaintiff, this systemic misconduct provides dispositive evidence of corporate awareness and reckless disregard, proving the Defendants willfully commercialized a platform for character assassination that directly caused the subsequent professional ruin of the Plaintiff."

28. On **December 27, 2024** during the WOLB 1010 AM Frank Conaway, Sr. Show, Co-host Attorneys Robert Dashiell and Tehma Smith-Wilson announced that they were leaving the show. Attorney Dashiell stated, "What is regrettable is that this program has proven to be far more valuable to the community than it has to the station ownership. I am leaving for the simple reason that I refuse to continue to pay $400 a month to do what the station owners ought to be doing which is contributing back to the community where from which they got their start. It's disgraceful, I won't do it."

29. This financial arrangement establishes a direct brokered-programming relationship, proving that the corporate Defendants actively commercialized the slot for profit while abandoning their duty to police the airwaves. By pocketing these fees and failing to provide compliance oversight or industry-standard safety delays, Defendants Urban One, Inc., Cathy Hughes, and Kristopher Simpson created a completely deregulated studio environment. This commercial pay-to-play framework directly facilitated and engineered the unmonitored broadcast that permitted host Carlton Douglas to defame the Plaintiff.

30. Plaintiff established an exhaustive, multi-year paper trail directly alerting Urban One leadership—including emails to Chairperson Cathy Hughes, Station Manager Howard Mazer, and Carlton Douglas on April 12, 2025, April 17, 2025, April 18, 2025,

May 7, 2025, May 10, 2025, December 19, 2025, and January 30, 2026—warning them that their hosts were misinforming the community, manipulating microphones to protect public officials, and harboring severe political conflicts of interest.

31. On **May 2, 2025**, the Frank Conaway Sr. show, host Carlton Douglas had as his guest, Clerk Xavier Conaway. The Outsiders Podcast's frequent co-host, former NAACP President, Baltimore City, Marvin 'Doc' Cheatham called into the program to ask Clerk Conaway about an employee in the building contracting Legionnaires' disease.

32. Clerk Xavier Conaway responded, "However, I can say that when we requested that proactive waterway test, it was no reason because of an employee of mine, I should say, employee of mine, that reported having, um…contracting legionnaires, or having an issue with that." Clerk Xavier Conaway also during the live on air interview declared: "I answer every question that is asked of me from any entity and we have answered and I haven't been impeached, I haven't been removed, I'm not in the news."

33. An Immediate Press Release on December 20, 2024, from Government Relations and Public Affairs headline, "Legionella Bacteria Detected in Baltimore City and District Courts," which then stated: "The Clerk of the Court at the Circuit Court of Baltimore City informed the Maryland Judiciary Friday morning, December 20, 2024, that a member of his staff is suspected of having been exposed to Legionella Pneumonia."

34. The bad-faith nature of the Defendants' "misinformation" smear campaign is completely exposed by a direct conflict in the public record. On May 2, 2025, during a live broadcast of The Frank Conaway Senior Show on WOLB 1010 AM, host Carlton Douglas provided an unmitigated platform to guest Clerk Xavier Conaway, who falsely

denied a critical courthouse biohazard a former NAACP President of Baltimore, Marvin "Doc" Cheatham, stating live: "when we requested that proactive waterway test, it was no reason because of an employee of mine... that reported having um contracting Legionnaires."

Conaway further declared during the live on air interview: "I answer every question... and I haven't been impeached, I haven't been removed, I'm not in the news."

35. In absolute truth, an official Maryland Judiciary Press Release issued months earlier on December 20, 2024—headlined "Legionella bacteria detected in Baltimore City and District Courts"—explicitly records that: "The Clerk of the Court at the Circuit Court of Baltimore City informed the Maryland Judiciary Friday morning, December the 20th, 2024 that a member of his staff is suspected of having been exposed to Legionella pneumonia." This multi-platform timeline documents a deliberate public deception, providing the clear retaliatory motive for the Defendants' subsequent technical censorship, line disconnections, and bad-faith executive threats to suppress Plaintiff's record-verified journalism and protect Senior VP Kristopher Simpson's 137,000 corporate Class D shares from regulatory exposure.

36. On **February 26, 2026**, Plaintiff emailed Cathy Hughes, Carlton Douglas, and station management a link to his public news-gathering post exposing the scathing state audit detailing $7.3 million spent unapproved and fraud vulnerabilities within the Circuit Court Clerk's office. This post generated immediate viral momentum, garnering over 165,000 publicly visible views on X, providing the direct, immediate motive for the subsequent airwave attack.

**D. December 23, 2024 Broadcast Defamation and Console Censorship**

37. The historical root of the corporate defendants' liability was solidified when host Jason Rodriguez explicitly invited the Plaintiff to appear as a guest on his December 23, 2024 broadcast of *Meet the People* on WOLB 1010 AM to publicly address the rat infestation crisis at the Baltimore City Circuit Court.

38. Host Jason Rodriguez explicitly thanked the Plaintiff for performing a necessary public accountability service that mainstream corporate networks ignored, stating: "A lot of times we reach out to folks that are pushing, you know, accountability. You know, where we don't see accountability being pushed by the mainstream media. So, I just want to thank you for your work, sir, that you continue to do."

39. Host Rodriguez then formally yielded the floor to Plaintiff, stating: "So let's go into this conversation. So you were instrumental in breaking the story. I want folks I want you to tell it…So you broke a story in reference to the Legionnaires disease going on at the Cicuit Court Building."

40. In response, Plaintiff Sean D. Simms delivered his investigative findings, detailing the connection between the Legionella biological hazard and a systemic, ongoing rat infestation verified directly by Regional Management Pest Control.

41. Plaintiff further exposed that the Circuit Court administration was actively attempting to conceal these hazards from the public and had forced employees to work in the contaminated facilities.

42. During this broadcast, host Rodriguez permitted guest Xavier Conaway to dial into the program and launch an aggressive personal attack against the Plaintiff. Clerk Xavier Conaway slandered and defamed the Plaintiff's name on the airwaves unabated and with absolute impunity, stating falsely that Plaintiff had criminally threatened municipal staff

and that law enforcement had been dispatched to intervene.

43. When Plaintiff attempted to speak to defend his integrity, Urban One broadcast personnel actively intervened to protect the public official from live accountability. Station operators maliciously manipulated the studio console, explicitly lowering the volume on the Plaintiff's microphone and ultimately cutting his line entirely to ensure the defamatory falsehoods stood uncontradicted on the airwaves leaving the mass media audience with the false impression that Plaintiff's public-interest journalism was unverified, while shielding Clerk Xavier Conaway from immediate accountability.

44. Plaintiff formally alerted Cathy Hughes and Howard Mazer to this specific console manipulation via email on April 12, 2025.

E. **The Catastrophic February 27, 2026 Broadcast and Live Kidnapping Threat**

45. On **February 27, 2026,** Plaintiff dialed into *The Frank Conaway Sr. Show* on WOLB 1010 AM to question guests Clerk Xavier Conaway and subsequently Register Belinda Conaway regarding the Office of Legislative Audits reports on their offices. Conaway launched into an on-air smear, falsely claiming Plaintiff was spreading baseless lies of "fiscal malfeasance" and fabricating a government advisory endorsement from Inspector General Isabel Cumming (later denied unequivocally in a written "No" from the IG to the Plaintiff).

46. Immediately following a live warning by non-party co-conspirator Belinda Conaway to "stay out of the Conaway orchard," the studio controls were weaponized to intentionally disconnect the Plaintiff from the call.

47. Minutes later, while Plaintiff was held muted, disconnected, and stripped of his right of reply, Belinda Conaway utilized the station's unmitigated frequency to level an

unprecedented, un-delayed, true criminal threat of kidnapping against the Plaintiff's household, threatening physical extraction and violence stating: *"I've been accused of kidnapping, but I wanna let you know something, Sean. If I start kidnapping people, I promise you'll be the first to know."*

48. Host Carlton Douglas willfully permitted the kidnapping threat to air completely un-delayed, and failed to deploy any technical or digital overrides.

49. Host Douglas, Clerk Conaway, and Belinda Conaway then proceeded to openly discuss, leak, and distort the confidential state employment records and wrongful termination status of the Plaintiff's spouse live on air under the manufactured smokescreen of a personal "vendetta."

50. Plaintiff immediately filed a criminal report with the Baltimore County Police Department (Incident # 26-058-0207, Officer Burrill) and filed a Peace Order in Baltimore County against Belinda Conaway.

51. On **March 24, 2026,** Plaintiff served written notice and the raw audio recording of the incident directly to Board Member D. Mitchell and CEO Alfred Liggins, explicitly warning them of active criminal threats and FCC regulatory violations.

F. The Initiated Review and General Counsel Stock Ownership Conflict

52. On **March 25, 2026, at 12:36 PM,** Senior VP & Chief Legal Officer Kristopher Simpson transmitted a formal email response to the Plaintiff, stating that Urban One takes *"all matters of regulatory compliance and broadcast integrity very seriously"* and formally confirming that an internal corporate review had been officially initiated.

53. Two hours later, on **March 25, 2026, at 2:40 PM,** Defendant Simpson transmitted a highly calculated follow-up email attempting to shield the upcoming investigation

findings behind a claim of attorney-client privilege, stating textually: *"Mr. Simms, the results of our investigation would be subject to attorney/client privilege so we could not share any details with you without that- which we would do."*

54. On **March 25, 2026, at 3:09 PM and 3:39 PM,** Defendant Simpson invited the submission of information, textually stating: *"I'm not sure what that means, but if you have a concern or concerns, do feel free to forward and we will review them."*

55. On **March 31, 2026, at 1:10 PM,** Defendant Simpson transmitted an email to the Plaintiff containing an ironclad, binding corporate admission of technical negligence, stating textually: "Mr. Simms, there is no mandatory delay...we will review our process and procedures internally after our review."

56. On **March 31, 2026, at 2:31 PM,** Plaintiff emailed the text of this admission directly to Simpson, investigator Stephanie Epps, and Board Members Alfred Liggins, G. Armstrong, Terry Jones, and B. McNeill, reminding them of his 1985 radio background and warning the board that operating without a 7-second delay system constituted an ongoing FCC violation and an unmitigated liability risk.

57. Thirty-one minutes later, on **March 31, 2026, at 3:02 PM,** Defendant Simpson replied defiantly, stating: "Mr. Simms, just as nothing requires that we have a delay system, there is nothing that requires that we disclose our internal business practices to any third parties..."

**G. The April 13, 2026 Executive Meeting and Epps Evasions**

58. On **April 13, 2026,** Plaintiff transmitted a formal "Meeting Memorialization" email to Board Members McNeill, Armstrong, Jones, and Mitchell, carbon-copying Liggins, Simpson, Epps, and Douglas. The email documented an official review call that took

place that day between Plaintiff, his representative Desiree Dodson, Urban One VP of Litigation, Labor & Employment Stephanie Epps, and paralegal Brooke Klag.

59. The memorialization text revealed that VP Stephanie Epps actively interrupted and refused to recognize the voice of Plaintiff's representative, Desiree Dodson, despite being explicitly informed that Ms. Dodson was the designated formal representative managing the active Maryland Department of Labor (DOL) whistleblower investigation.

60. The text further memorialized that when Plaintiff demanded an independent external investigation free from corporate politics, and directly challenged the legal department regarding whether General Counsel Kristopher Simpson owned corporate stock, VP Epps engaged in explicit evasion, textually stating that she *"wouldn't say that he was overseeing, but he is the Chief Legal Officer of the company,"* and claiming she did not know if he owned stock.

H. The Delivery of SEC insider Trading Data and Simpson's Criminal Threats

61. On **April 15, 2026,** Defendant Simpson issued a formal corporate letter textually refusing to engage an external investigator, asserting that the company reserved "sole discretion" to determine the methodology, scope, and resources of the review, and confirming that Stephanie Epps had thoroughly reviewed the raw broadcast audio files. Simpson placed a strict response deadline of Monday, April 20, 2026 to conclude the matter.

62. On **April 21, 2026, at 4:26 PM,** Plaintiff transmitted a formal email to Stephanie Epps, carbon-copying the entire executive matrix and Board, confirming his continued participation via the written medium and delivering six (6) highly detailed, verified

corporate finance and investigative screenshots, including explicitly indexing official SEC regulatory filings of Kristopher Simpson personal holding of 137,000 corporate Class Ds shares (UONEK), comprehensive insider ownership logs, compensation (Liggins at US$5.55m, Hughes at US$2.12m), and a 31.3-year average Board of Directors tenure.

63. On April 24, 2026, at 6:38 PM, immediately following the receipt of this financial exposure package, Defendant Kristopher Simpson bypassed all lawful corporate protocols and transmitted a highly restrictive, isolated email directly to the Plaintiff, carbon copying only Stephanie Epps.

64. Crossing all permissible bounds of corporate legal defense, the Chief Legal Officer directly weaponized the state criminal code to enforce the silence of an active federal witness, writing verbatim:

> "Note under Maryland code criminal law section 3-805 it is a misdemeanor to send repeated or malicious messages that alarm annoy or seriously distress another person this includes communication over text email social media apps and other digital platforms there's also a corresponding federal law... that said continued harassment will not be tolerated therefore we ask that you make your final submission and thereafter cease any and all further communication with our company and any and all of our employees including calling into any of our programming please be advised we will refer the matter to the appropriate authorities if our request is not followed thank you"

65. On **April 27, 2026, at 3:42 PM,** Plaintiff outmaneuvered this isolation

strategy by transmitting a formal email directly to Kristopher Simpson, carbon-copying Stephanie Epps, and blind carbon-copying the entire Board of Directors and CEO Alfred Liggins, embedding the full text thread of Simpson's criminal § 3-805 threat to ensure uniform corporate-wide notice.

66. In this email thread was Plaintiff's investigative Maryland Public Information Act (MPIA) assistance request email on September 26, 2023 at 3:37 PM to former Baltimore City Mayor, Sheila Dixon and former Baltimore City Council Chair, Register Belinda Conaway. Plaintiff states: "I would greatly appreciate it if you could assist me, if possible, (seeing that you both were in the City Council and/or Mayor), in procuring the information requested from budget records." This included an attachment email to Pedro Aponte, Assistant Budget Director, Bureau of the Budget and Management Research – Department of Finance, where Plaintiff requested fees paid out by the Mayor's Office and Baltimore City Council from 1998 to 2019 to assess any overcharged payments to the Circuit Court for Baltimore City.

67. On **May 27, 2026, at 4:08 PM,** Defendant Stephanie Epps, with the direct CC alignment of Kristopher Simpson, officially closed the review, issuing a formal letter declaring that after reviewing the raw audio and conducting interviews, she did not find sufficient information to conclude that a violation of any applicable legal standards occurred, wrapping the entire cover-up in broad assertions of "privacy and confidentiality."

I. **Ongoing On-Air Retaliation and Local Chilling Effect**

68. On **March 20, 2026,** during the Frank Conaway Sr. Show, host Carlton Douglas was

asked by a caller if the Register of Wills Belinda Conaway threatened to kidnap someone and he stated, "No."

69. The same caller asked host Douglas if there was a 10 second delay to stop threats from being aired. Host Douglas then stated, "No, a 10 second delay for what?" Then host Douglas again stated "No" when told by caller to stop threats from being aired.

70. This admission demonstrates that Defendant host Carlton Douglas made a knowingly false statement and material misrepresentation during the subsequent March 20, 2026, broadcast when he on-air threat and refusing to utilize standard broadcast delay mechanisms, Defendant Douglas and corporate Defendants Urban One, Inc., Cathy Hughes, and Kristopher Simpson acted with gross negligence and actual malice. This broadcasting falsehoods, and failing to monitor tortious content, directly reinforcing the credibility of the Plaintiff's claims that the Defendants operate with a reckless disregard for the truth to destroy professional reputations.

71. On **September 18, 2026,** months after the corporate defendants declared their review complete, Plaintiff monitored *The Frank Conaway Sr. Show* on WOLB 1010 AM and observed that Defendant Carlton Douglas remained fully active on the airwaves with absolute corporate impunity.

72. During this live broadcast, Defendant Douglas explicitly utilized his live microphone access to enforce targeted public exclusions, stating verbatim to the mass audience:

> "Let me say this before I even play it: Anybody that don't vote and anybody that got negative attitudes about black women in any matter, including losing their jobs, don't need to call this show. Period. I don't

care where you call. You can call down -- down the dial, up the dial, across the dial. But I don't want to hear it from you. Period."

73. This live broadcast heard by Plaintiff demonstrates an intentional corporate policy of ongoing retaliation and exclusion, creating a severe, active chilling effect within Baltimore City limits designed to scare, silence, and deter municipal workers, state court staff and potential whistleblowers from cooperating with active federal law enforcement and EEOC investigations.

**COUNT I**

**Federal Witness Intimidation and Tampering — 42 U.S.C. § 1985(2)**

(Against All Defendants)

74. Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as if fully set forth herein.

75. Defendants acted in a coordinated civil conspiracy to deter, intimidate, and retaliate against Plaintiff Sean D. Simms to prevent him from participating as a representative and witness in active federal EEOC investigations, violating the supreme protections of 42 U.S.C. § 1985(2). Grounded in the U.S. Supreme Court precedents of Haddle v. Garrison, 525 U.S. 121 (1998) and Kush v. Rutledge, 460 U.S. 719 (1983), a private conspiracy designed to intimidate or criminally threaten an active witness in federal administrative or judicial proceedings is fully actionable without proving class-based animus. The deployment of direct criminal prosecution threats under Maryland Criminal Law § 3-805 by General Counsel Simpson, carbon-copied to investigator Epps, to force the suppression of forensic evidence constitutes a per se statutory violation.

**COUNT II**

**Civil Rights Violation Under Color of Law — 42 U.S.C. § 1983**

(Against All Defendants)

76. Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as if fully set forth herein.

77. Private media actors who willfully engage in a joint venture, shared design, or corrupt conspiracy with state officials to violate a citizen's constitutional rights operate under color of law and are fully liable under 42 U.S.C. § 1983. Grounded in the binding U.S. Supreme Court precedents of Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982) and Dennis v. Sparks, 449 U.S. 24 (1980), private entities lose their independent immunity when they act as a functional extension of state actors. Defendants actively deployed their licensed facility to leak private employment files, mute Plaintiff's microphone, and air an un-delayed kidnapping threat to insulate corrupt judiciary clerks from public accountability.

## COUNT III

**Civil Conspiracy**

(Against All Defendants)

78. Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as if fully set forth herein.

79. Pursuant to the foundational standards set forth by the Maryland Court of Appeals in Hoffman v. Stamper, 385 Md. 1 (2005), a civil conspiracy is established upon showing a deliberate agreement between two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in actual damages. Defendants operated with a clear, shared design to execute a corporate cover-up, using pre-litigation administrative traps, selective evidence screening, and criminal police-referral threats to protect political alliances, leak personnel file information and preserve Kristopher Simpson's insider

stock valuation at the direct expense of an investigative journalist's safety.

## COUNT IV

**Violation of the Privacy Protection Act — 42 U.S.C. § 2000aa**

(Against Defendants Urban One, Inc. and Kristopher Simpson)

80. Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as if fully set forth herein.

81. Under the federal Privacy Protection Act, 42 U.S.C. § 2000aa, it is unlawful for any person or corporate entity to execute a forced seizure, suppression, or mandated destruction of work product materials possessed by an independent journalist. Grounded in Citicasters v. McCaskill, 89 F.3d 1350 (8th Cir. 1996) and Zurcher v. Stanford Daily, 436 U.S. 547 (1978), the law provides a strict statutory cause of action when corporate entities deploy coercive threats or extrajudicial mandates to intercept and block a reporter's pipeline. Defendants' formal April 24, 2026 written mandate ordering Plaintiff to stop transmitting records and cease all correspondence constitutes an illegal corporate suppression of journalistic work product.

## COUNT V

**Tortious Interference with Economic and Administrative Relations**

(Against All Defendants)

82. Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as if fully set forth herein.

83. Pursuant to the long-standing Maryland standards of Macklin v. Robert Logan Assocs., 334 Md. 287 (1994) and Kaser v. Financial Protection Marketing, Inc., 376 Md. 621 (2003), tortious interference is established when a defendant executes intentional, improper, and malicious acts designed to disrupt, degrade, or destroy a plaintiff's lawful commercial and professional

relationships. Defendants actively manipulated audio consoles to shut down Plaintiff's media access, issued corporate communication bans, and threatened him with criminal prosecution to completely paralyze his investigative press platform, shatter his professional community standing, and disrupt his lawful role as an EEOC whistleblower representative.

**COUNT VI**

**Defamation Per Se (Actual Malice)**

(Against All Defendants)

84. Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as if fully set forth herein.

85. Under Maryland law, statements that falsely charge an individual with a criminal offense, attribute an active lack of professional integrity, or cause direct injury to a person's trade or business constitute Defamation Per Se, and damages are legally presumed. Grounded in Hearst Corp. v. Hughes, 297 Md. 112 (1983) and Samuels v. Tschechtelin, 135 Md. App. 483 (2000), and aligned with the high constitutional standard of New York Times Co. v. Sullivan, 376 U.S. 254 (1964), Defendants operated with documented Actual Malice. Host Carlton Douglas and guest public officials broadcasted bold, fabricated lies branding Plaintiff's research as a fraudulent "vendetta," while fully aware that Plaintiff was an investigative podcaster who held extensive public audit files and formal MPIA requests.

**COUNT VII**

**Intentional Infliction of Emotional Distress (IIED)**

(Against All Defendants)

86. Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as if fully set forth herein.

87. Aligned with the strict four-element liability standard established by the Maryland Court of Appeals in Harris v. Jones, 281 Md. 560 (1977) and Batson v. Shiflett, 325 Md. 684 (1992), a plaintiff sustains a claim for IIED when a defendant's conduct is extreme and outrageous, acts with intentional or reckless malice, and causes emotional distress and trauma so severe that no reasonable person should be expected to endure it. Weaponizing a commercial radio station to air an unmitigated criminal kidnapping threat against a citizen, followed by the Chief Legal Officer using fabricated criminal code threats to suppress the evidence, and culminating in the host's September 18, 2026 ongoing on-air targeting of his family's whistleblower status, public leaking of spouse's employment status constitutes an atrocious, high-handed assault that inflicted severe physical fear and compelled the modification of his personal security posture. Plaintiff claims severe emotional trauma.

## COUNT VIII

**Negligent Vetting, Supervision, and Retention**

(Against Defendants Urban One, Inc. and Catherine Hughes)

88. Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as if fully set forth herein.

89. Pursuant to the direct corporate liability standards established in Cramer v. Housing Opportunities Comm'n, 304 Md. 705 (1985) and Henley v. Prince George's County, 305 Md. 320 (1986), a corporate license-holder maintains an independent, non-delegable duty to vet, supervise, and strip hostile or dangerous personnel of their operational capacity when placed on notice of ongoing harm. Defendants Hughes and Urban One, Inc. possessed granular, written

knowledge for over a year that their hosts were manipulating consoles and airing unverified attacks, yet consciously chose to retain Carlton Douglas on the air with total impunity, directly enabling the ongoing harassment of a known former station client.

## COUNT IX

**Negligent Internal Controls and Public Safety Broadcast Liability**

(Against Defendant Urban One, Inc.)

90. Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as if fully set forth herein.

91. Grounded in the foundational punitive standards of Owens-Illinois, Inc. v. Zenobia, 325 Md. 420 (1992) and Exxon Corp. v. Yarema, 69 Md. App. 124 (1986), a corporation's conscious, deliberate disregard for public safety and standard internal controls constitutes actual malice in law, justifying massive punitive awards. Defendant Urban One, Inc. severely breached its duty as an FCC licensee by operating WOLB 1010 AM with a total absence of a mandatory 7-second delay dump override system. The gross operational bad faith is exposed by the asymmetric double standard it maintained on February 27, 2026: while actively spending resources to settle a \$675,000.00 federal cybersecurity data leak lawsuit (Gomian Konneh v. Urban One, Inc.) to protect internal company data, it completely failed to enforce basic internal controls on its airwaves, allowing a private whistleblower's confidential files to be exposed live on air while concurrently facilitating the transmission of an unmitigated, un-delayed criminal kidnapping threat against Plaintiff Sean D. Simms.

## COUNT X

**Conspiracy to Deprive Equal Protection and Suppress Freedom of the Press – 42 U.S.C. § 1985(3)**

(Against All Defendants)

92. Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as if fully set forth herein.

93. Defendants entered into a coordinated corporate and individual conspiracy, animated by discriminatory and retaliatory political animus, to hinder, obstruct, and completely suppress Plaintiff's protected First Amendment news-gathering platform and freedom of the press regarding the $7.3 Million MDEC fiscal fraud scandal.

94. In furtherance of this conspiratorial design, Defendants executed intentional overt acts—including technical console muting, line disconnections, leaking confidential state employment records, broadcasting true threats of physical kidnapping, and deploying bad-faith criminal statutory threats—directly depriving the Plaintiff of his constitutional liberties as an independent journalist.

95. As a direct result of this targeted civil rights conspiracy, Plaintiff suffered severe psychological trauma, profound physical fear, and structural devastation to his professional news trade, fully actionable under the binding standards of Griffin v. Breckenridge, 403 U.S. 88 (1971) and Bray v. Alexandria Women's Health Clinic, 506 U.S. 263 (1993).

**COUNT XI**

**Respondeat Superior and Corporate Ratification**

(Against Defendant Urban One, Inc.)

96. Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as if fully set forth herein.

97. At all times relevant, broadcast host Carlton Douglas, Senior VP Kristopher Simpson, and VP Stephanie Epps acted within the scope of their employment, agency, and official executive

positions on behalf of Defendant Urban One, Inc.

98. Defendant Urban One, Inc., through its Board of Directors, Founder Cathy Hughes, and CEO Alfred Liggins, possessed actual written notice of the unlawful conduct, yet failed to intervene, failed to remediate the station's broadcast safety vulnerabilities, and explicitly approved the closing of the internal review.

100. By maintaining the employment of the tortfeasors, utilizing its corporate infrastructure to execute communication bans, and formally validating the administrative suppression of the Plaintiff's physical evidence, Defendant Urban One, Inc. explicitly adopted, authorized, and ratified the underlying tortious acts and civil rights violations.

101. Under the governing standards of *Embrey v. Holly*, 293 Md. 128 (1982) and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Defendant Urban One, Inc. is directly liable for all resulting compensatory and punitive damages under the doctrines of respondeat superior and corporate ratification.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Sean D. Simms hereby formally demands a trial by jury on all counts, issues, and claims so triable in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Sean D. Simms respectfully requests that this Court enter judgment in his favor and against Defendants Urban One, Inc., Cathy Hughes, Kristopher Simpson, and Carlton Douglas, jointly and severally, granting the following relief:

A. Compensatory Damages: Award Plaintiff $15,000,000.00 in actual and compensatory damages for permanent economic injury to his journalistic platform, severe emotional trauma, profound mental anguish, loss of professional reputation, and out-of-pocket

physical security costs resulting directly from the Defendants' unlawful actions;

B. Punitive Damages: Award Plaintiff $20,000,000.00 in punitive damages against the Defendants, in their individual and corporate capacities, for their high-handed, malicious, and outrageous conduct, executed with actual malice and reckless corporate indifference, to deter such systemic media abuses and corporate witness intimidation in the future;

C. Declaratory and Injunctive Relief: Issue a formal declaration that Defendants' operation of commercial airwaves without standard public safety technical overrides violates their duties as public trustees, and enter a permanent injunction commanding Urban One, Inc. to cease all targeted on-air programming exclusions and install mandatory 7-second delay dump buttons across its frequencies;

D. Pre-judgment and post-judgment interest as allowed by law; and

E. Grant such other, further, or different relief as this Court deems just, proper, and necessary under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Sean D. Simms hereby formally demands a trial by jury on all counts, issues, and claims so triable in this action.

**I DO HEREBY DECLARE AND AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.**

Dated: September 25, 2026

Respectfully submitted,

Sean D. Simms, Plaintiff *pro se*

4216 Lowell Drive
Pikesville, MD 21208
Ph: 667-512-6371
Email: sdsimms65@gmail.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **SEAN D. SIMMS**<br><br>*Plaintiff, pro se*<br><br>v.<br><br>**URBAN ONE, INC., et al.,**<br><br>*Defendants,* | Civil Action No:____________ |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of September, 2026, a copy of the foregoing Pro Se Civil Complaint, Jury Trial Demand, along with the issued Summonses in a Civil Action, were formally dispatched to be legally served via Private Process Server upon the designated Corporate Resident Agent for Defendant Urban One, Inc., and authorized service recipient for the individual Defendants: CSC Lawyers Incorporating Service Company
Registered Corporate Agent for Urban One, Inc.
(Also serving as the corporate tracking nexus for Catherine Hughes,
Kristopher Simpson, and Carlton Douglas)
7 St. Paul Street, Suite 820
Baltimore, Maryland 21202

Dated: September 25, 2026

Respectfully submitted,

______________________________
Sean D. Simms, Plaintiff pro se

4216 Lowell Drive, Pikesville MD 21208, ph: 667-512-6371